IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JACK T. GREGORY,

        Plaintiff,

vs.                      Case No. 12-2238-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 22, 2010, administrative law judge (ALJ) Patricia E. Hartman issued her decision (R. at 19-29). Plaintiff alleges that he has been disabled since October 1, 2008 (R. at 19). Plaintiff is insured for disability insurance

4

benefits through December 31, 2013 (R. at 21). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 21). At step two, the ALJ found that plaintiff has the following severe impairments: mild degenerative disc disease, attention deficit hyperactivity disorder, posttraumatic stress disorder, Asperger's syndrome and depression (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21). After determining plaintiff's RFC (R. at 23), the ALJ found at step four that plaintiff can perform past relevant work as a product assembler, light (R. at 27). In the alternative, at step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 28-29). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 29).

**III. Did the ALJ err in her consideration of the opinions of Dr. Nottingham, a treating physician?**

On August 26, 2010, Dr. Robert Nottingham wrote the following letter:

> This letter is regarding Jack Gregory, date of birth September 28, 1960. This gentleman has been a patient in [this] office for the past 2 years' time. He has been seen on multiple occasions during that time complaining of a variety of arthritic complaints including his lumbar spine,

> thoracic spine, and cervical spine. He has
> had physical therapy. He is on multiple
> medications for these problems, yet he
> continues to be disabled because of the pain
> involved in ordinary activities. He
> presently is taking muscle relaxants,
> narcotics, and anti-inflammatories to try
> and control the pain, which at least has
> been fairly successful. He has been seen by
> neurosurgery and he has had physical therapy
> done, none of which has seemed to relieve
> his pain in any substantial manner.
> **Diagnosis is possible fibromyalgia and
> osteoarthritis**… His subjective complaints
> are fairly unchanging. He complains of
> chronic pain with almost any kind of motion,
> extremities included. There is no swelling.
> There is no discoloration. Pulses are good.
> Range of motion seems good. He just
> complains of pain with most any kind of
> activity. He has developed Dupuytren's
> contractures of the hand, and he has seen
> the plastic surgeons for that. He seems to
> be fairly well limited in his ability to
> function. This is because of the pain. It
> is very subjective in its presentation, but
> he seems consistent in his complaints of
> pain each and every time he is seen. He has
> also had a history of some depression,
> although that seems under much better
> control at the present time.

(R. at 410, emphasis added). In a second letter, dated September 15, 2010, Dr. Nottingham stated the following:

> This letter is in regard to Jack Gregory who
> is a patient in [this] office for the past 2
> years' time. He has been seen for a variety
> of complaints, mostly arthritic in nature of
> lumbar spine, thoracic spine, and cervical
> spine. He has had physical therapy. He has
> been on multiple medications because of
> these, but continues to complain of pain
> despite treatment. He presently is taking
> muscle relaxants, narcotics, and anti-

6

>           inflammatories to try and control the pain,
>           and that seems to be under fair control.
>
>           His past history is positive for the fact
>           that he has seen neurosurgery and had
>           physical therapy, none of which seemed to
>           relieve the pain.

(R. at 412). Dr. Nottingham's assessment included "Chronic pain. Osteoarthritis versus fibromyalgia" (R. at 412).

The ALJ stated the following regarding the opinions of Dr. Nottingham:

> On August 26, 2010, Robert M. Nottingham,
> MD, the claimant's treating physician,
> opined the claimant was disabled. Contrary
> to this opinion, he noted the claimant's
> pain is successfully controlled with muscle
> relaxants, narcotic and anti-inflammatories.
> <u>He</u> opined his range of motion was good and
> <u>specifically noted the claimant's complaints</u>
> <u>of pain were purely subjective</u> (Exhibit 18F
> and 19F). Dr. Nottingham's contradicting
> opinion is unreliable and is therefore given
> little weight. The possibility always
> exists that a doctor may express an opinion
> in an effort to assist a patient with whom
> he sympathizes for one reason or another.
> Another reality, which should be mentioned,
> is that patients can be quite insistent and
> demanding in seeking supportive notes or
> reports from their physicians, who might
> provide such a note in order to satisfy
> their patients' requests and avoid
> unnecessary doctor/patient tension. While
> it is difficult to confirm the presence of
> such motives, they are more likely in
> situations where the opinion in question
> departs substantially from the rest of the
> evidence of record, as in the current case.
> The claimant does in fact suffer from mild
> degenerative disc disease, however not at
> the disabling levels alleged. <u>Thus, the</u>
> <u>objective medical evidence does not</u>

> demonstrate abnormalities, which would
> interfere with the claimant's ability to
> perform the range of work identified above.

(R. at 25, emphasis added).

On December 2, 2010, Dr. Ruhlman saw plaintiff at the request of Dr. Nottingham. On examination, Dr. Ruhlman found that plaintiff had 15 of 18 fibromyalgia tender points. His impression was as follows:

> Fibromyalgia: cause of most of his pain,
> though he may have some degenerative
> changes, I do not believe x-rays would
> significantly change treatment decisions and
> without insurance, the cost would not be
> worth it.

(R. at 433).

In discounting Dr. Nottingham's opinion that plaintiff was disabled, the ALJ clearly relied on the fact that Dr. Nottingham specifically noted plaintiff's subjective complaints of pain, and the lack of objective medical evidence to support his opinions. However, as this and other courts have repeatedly stated, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010)(when the record contained diagnoses of chronic pain syndrome or fibromyalgia, the court stated that complaints of severe pain do not readily lend themselves to analysis by objective medical tests, and are notoriously difficult to

diagnose and treat; further noting that no objective medical tests reveal the presence of fibromyalgia); Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999). Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia (R. at 425); Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn, 102 F. Supp.2d at 1259.

As the case law makes clear, the lack of "objective" medical evidence is not determinative of the severity of

fibromyalgia.  As this court has previously indicated, it is error for the ALJ to discount plaintiff's allegations of limitations due to fibromyalgia because of the lack of objective medical evidence.  Burgess v. Colvin, Case No. 12-1258-SAC (D. Kan. Aug. 21, 2013; Doc. 17 at 9); Gibbs v. Colvin, Case No. 11-1318-SAC (D. Kan. March 6, 2013; Doc. 30 at 6-9); Walden v. Astrue, Case No. 11-4120-SAC (D. Kan. Aug. 28, 2012; Doc. 15 at 15-16).

The determination of fibromyalgia rests on a patient's subjective reports and other symptoms.  Dr. Ruhlman found that plaintiff had 15 of 18 fibromyalgia tender points.  He went on to say that he did not believe that x-rays would significantly change treatment decisions (R. at 433).  It is clear that the ALJ, as in Burgess, Gibbs and Walden, improperly discounted the opinions of Dr. Nottingham because of the lack of objective medical evidence, despite the diagnosis of fibromyalgia by Dr. Nottingham, which was confirmed by Dr. Ruhlman.  Dr. Ruhlman further stated that fibromyalgia caused most of his pain.  This case shall therefore be reversed and remanded for further hearing in order for the Commissioner to reevaluate the opinions of Dr. Nottingham in light of the diagnosis of fibromyalgia and the case law set forth above governing the consideration of fibromyalgia.

The ALJ also speculated that Dr. Nottingham may have expressed his opinions in order to assist a patient with whom he sympathizes, or in responding to a patient who is quite insistent and demanding, and who might provide such a note to satisfy their patient's requests and avoid unnecessary doctor/patient tension. However, the ALJ cited to no evidence in support of this assertion.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

As in <u>Langley</u>, in the case before the court, the ALJ did not cite to any legal or evidentiary basis for concluding that Dr. Nottingham's opinions were an act of courtesy to a patient, or to assist a patient with whom he sympathizes, or to satisfy a patient's request and avoid unnecessary doctor/patient tension. Absent any legal or evidentiary basis, this was not a proper basis for discounting the medical source opinion.

Finally, on remand, the ALJ should consider those portions of the medical records from Dr. Nottingham that clearly provide support for his opinions. On July 13, 2009, he indicated that plaintiff takes a muscle relaxant, although it "does make him real sleepy" (R. at 347). On that same date, Dr. Nottingham stated that there was "hardly any motion in his low back area at all" (R. at 347). On November 9, 2009, Dr. Nottingham noted that plaintiff was taking Lortab, but that it was "not controlling the pain" (R. at 413). He went on to say that plaintiff "has generalized arthralgias[2] and myalgias[3] has been going on for several months time, has been getting worse" (R. at 413).

**IV. Other issues raised by plaintiff**

Plaintiff has raised other issues. However, the court will not address most of these issues in detail because they may be

---

[2] Arthralgia is defined as pain in a joint. <u>Webster's New World Medical Dictionary</u>, 3rd ed. (2008 at 30).
[3] Myalgia is defined as pain the muscles or within muscle tissue. <u>Webster's New World Medical Dictionary</u>, 3rd ed. (2008 at 284).

affected by the ALJ's resolution of the case on remand after the ALJ gives further consideration to the opinions of Dr. Nottingham, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, the court will address two issues: (1) plaintiff's mental limitations and the related medical evidence, and (2) plaintiff's daily activities.

First, plaintiff argued that the ALJ failed to consider plaintiff's mental limitations when making her RFC findings (Doc. 13 at 37). The record includes a state agency mental RFC assessment by Dr. Fantz. Although the weight accorded to this assessment was not specifically raised by plaintiff, because this case is being reversed and remanded for other reasons, it will be addressed in order to forestall reversible error. Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012).

Dr. Fantz opined that plaintiff has moderate limitations: (1) in the ability to understand, carry out and remember detailed instructions; (2) in the ability to maintain attention and concentration for extended periods; and (3) in the ability to interact appropriately with the general public (R. at 324-325). Dr. Fantz went on to say that plaintiff could not deal with the public on a sustained basis, and would have difficulty with more complex and detailed tasks, particularly those requiring sustained concentration for more than 2 hours without

13

a break (R. at 326).  The ALJ gave "most weight" to these assessments (R. at 27).

In her RFC findings, the ALJ's only mental limitation was to limit plaintiff to simple unskilled work with an SVP of 1 or 2 (R. at 23).  The ALJ failed to explain her failure to include the specific limitations set out in the assessment by Dr. Fantz despite giving "most weight" to the assessment.  However, even simple work can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention. Moderate impairments may also decrease a claimant's ability to perform simple work.  Bowers v. Astrue, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

Furthermore, in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions. The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

In addition, according to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p,

1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ should explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

As noted above, the ALJ provided no explanation for not including all of the limitations in the mental RFC assessment in her RFC findings for the plaintiff despite giving "most weight" to the assessment. In order to forestall future error, on

remand, the ALJ should either include all of the limitations in the assessment in the RFC findings, or, in the alternative, provide a legally sufficient explanation for not including these limitations in plaintiff's RFC findings.

Second, plaintiff takes issue with the ALJ's reliance on plaintiff's daily activities (Doc. 13 at 25). The ALJ noted that plaintiff is able to care for himself and his personal hygiene, he watches television, and eats meals prepared by another person. He cuts the grass once a week (which takes two hours), he drives, goes out alone, shops, and spends some time with others. The ALJ stated that such activity is inconsistent with the alleged symptoms of disability (R. at 26).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in

17

substantial gainful activity. <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); <u>Thompson</u>, 987 F.2d at 1490.

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery

>     shopping, and visiting friends. We found
>     this to be an unpersuasive reason to deny
>     benefits: "**We have repeatedly held...that
>     'the ability to do activities such as light
>     housework and visiting with friends provides
>     little or no support for the finding that a
>     claimant can perform full-time competitive
>     work.**'" Id. (quoting Hogg v. Shalala, 45
>     F.3d 276, 278 (8th Cir.1995)). Moreover, we
>     have reminded the Commissioner
>
> > **that to find a claimant has the
> > residual functional capacity to
> > perform a certain type of work,
> > the claimant must have the ability
> > to perform the requisite acts day
> > in and day out, in the sometimes
> > competitive and stressful
> > conditions in which real people
> > work in the real world...The
> > ability to do light housework with
> > assistance, attend church, or
> > visit with friends on the phone
> > does not qualify as the ability to
> > do substantial gainful activity**.
>
>     Thomas v. Sullivan, 876 F.2d 666, 669 (8th
>     Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Plaintiff's activities, as described above, do not qualify as the ability to do substantial gainful activity. Watching television is not inconsistent with allegations that a person is unable to work. See Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011)(watching television not inconsistent with allegations of pain and concentration problems). Furthermore, one does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.

2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  On remand, the ALJ will need to consider plaintiff's daily activities in light of the regulations and case law set forth above.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 25th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge